IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2014

**STATE OF TENNESSEE v. JACKIE WAYNE MILLER**

**Appeal from the Circuit Court for Marshall County**
**No. 12-CR-183    Robert Crigler, Judge**

_____

**No. M2013-01188-CCA-R3-CD - Filed February 28, 2014**

_____

The Defendant, Jackie Wayne Miller, pled guilty to initiation of the process of manufacturing methamphetamine and possession of drug paraphernalia, with the trial court to determine the length and manner of the sentences.  The trial court subsequently ordered the Defendant to serve an effective sentence of eight years and three months in the Tennessee Department of Correction.  The Defendant appeals, asserting that the trial court erred when it denied his request for alternative sentencing.  After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

Michael J. Collins, Shelbyville, Tennessee, for the appellant, Jackie Wayne Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

A Marshall County grand jury indicted the Defendant for initiation of the process of manufacturing methamphetamine and possession of drug paraphernalia.  On February 20, 2013, the Defendant entered a plea of guilty to each of the indicted offenses.  The trial court sentenced the Defendant to an effective sentence of eight years and three months.

At the guilty plea submission hearing, the State offered the following recitation of the evidence in support of the trial court's acceptance of the Defendant's guilty plea:

[This incident] occurred in the early morning hours of June 26, 2012, a little after midnight. The police department was called to a room at the Celebration Inn and then ultimately the Drug Task Force was called in. I think what had happened, a bondsman had gone to this room looking for the defendant and then they discovered what appeared to them to be meth related paraphernalia or a meth lab, so they called the police department. The police department concurred with what was being seen so they called in the Drug Task Force.

David Henley had gone in the room but he had to use a breather. He used to work with the Lewisburg Police Department. He is a meth certified lab officer. It appeared to him to be the old school red phosphorous, Red P lab, as opposed to your more common one pot labs that we typically see.

Brad Martin of the task force, he also went in and upon going in the room he located a number of items used in a meth manufacture. On the scene was a coffee filter with a large amount of white powder which appeared to be crushed up sudafedrine [sic]. There was a cup that had coffee filters in it with red material that bled through. That was suspected to be red phosphorous. There was a stove top portable burner on the sink. There were Mason jars with pantyhose and aluminum foil; a Pyrex dish; rubbing alcohol, and hydrogen peroxide; also Coleman fuel. There was two bottles that were found hanging that had tubing connected to them which appeared to be a rather sophisticated gasser.

Then there was a bottle of muriatic acid; a bottle of sodium hydroxide. There were again more Mason jars. A bottle of acetone; more tubing; more coffee filters.

There was a trash bag that was full of used items. I believe they found a box of sudafedrine [sic]. That was an empty box of sudafedrine [sic].

The [D]efendant - - when one of the police officers got to the room, the [D]efendant admitted to him that this was his meth lab. There was another individual associated with that room and I think he said a similar thing. He said he had purchased a box of sudafedrine [sic] that was to be used to manufacture meth. And in fact the box they found matched the description of what this other individual provided.

The Defendant agreed with the facts announced by the State and offered a plea of guilty as to each charge, which was accepted by the trial court.

At the sentencing hearing, the trial court admitted into evidence the presentence report and Washington County indictments charging the Defendant with promotion of meth manufacture, possession of a schedule IV controlled substance, and possession of drug paraphernalia.

Bobby Vencill testified on the Defendant's behalf. He stated that the Defendant had worked for him as a truck driver from 1997 until 2011. Mr. Vencill explained that this job was "seasonal," so, during slower times, the Defendant helped with welding jobs and work around Mr. Vencill's farm. Mr. Vencill described the Defendant as "humble," stating that the Defendant "would do whatever you would ask him to do." Mr. Vencill additionally described the Defendant as "reliable" and a "good employee." Mr. Vencill stated that if the Defendant were sentenced to probation, he would employ the Defendant.

On cross-examination, Mr Vencill testified that there were between five and ten occasions during which he suspected the Defendant was "under the influence" at work. He said he addressed his concern with the Defendant, and the Defendant "was honest" but would "convince [Mr. Vencill] that he was going to quit."

Don Cook testified he had been working with the Defendant through the AA program in the Marshall County jail. Mr. Cook confirmed that he was testifying "voluntarily." He said that he did not "normal[ly]" testify for persons he worked with through AA in jail. Mr. Cook said that the Defendant had been attending AA every week, and he believed the Defendant was "very sincere." Mr. Cook recalled a time when the Defendant inquired about "what will happen" after he was released from jail. Mr. Cook obtained and provided the Defendant with a list of contacts and meetings in his area. He stated that he believed the Defendant "want[ed] to change his life." He said that the Defendant "doesn't want to go back to the old life he was living" and was "willing to do anything it takes to keep the new life he has gotten today."

After hearing the evidence, the trial court considered the Defendant's criminal history composed mostly of misdemeanors beginning in 1994. Based upon these convictions, the trial court determined that the Defendant would be sentenced as a Range I, standard offender. The trial court then recited the Defendant's criminal history, noting that the Defendant was released from jail on bond in Washington County at the time of the instant offenses. The trial court considered the evidence received at the guilty plea submission hearing and sentencing hearing; the presentence report; statutory mitigating and enhancement factors; the criminal

conduct involved; arguments of counsel; and the principles of sentencing. The trial court noted the Defendant's long history of criminal conduct based upon his convictions and drug use since the age of twenty-two. The trial court also noted that the Defendant had admitted in the presentence report to "cooking meth" for himself and other people for "a couple of years." It then sentenced the Defendant to serve eight years and three months for the initiation of a process intended in the result of methamphetamine, a Class B felony, and eleven months and twenty-nine days for the possession of drug paraphernalia conviction, to run concurrently. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant argues that the trial court erroneously denied him alternative sentencing. The Defendant contends that he is eligible for the Community Corrections program and, therefore, the trial court should have sentenced him accordingly. The State responds that the trial court properly considered the Defendant's lengthy history of criminal activity and substance abuse in denying alternative sentencing. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Bise*, 380 S.W.3d at 682. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79. We are also to recognize that the defendant bears "the burden of demonstrating that the

sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence

to others likely to commit similar offenses; or

(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

Because the Defendant was convicted of a Class B felony, he is not considered to be a favorable candidate for alternative sentencing, and he has not carried his burden of demonstrating that he is a proper candidate for alternative sentencing.  The Defendant's criminal history began in 1994, spanning nearly two decades.  The Defendant, at the time of his arrest, was released on bond for other methamphetamine-related charges and operating a methamphetamine lab in a hotel room.  In the presentence report, the Defendant admitted to regular use of methamphetamine for a ten-year period, and to "cooking" this dangerous substance for himself and others for two years.  The record supports the trial court's determination that confinement is necessary based on the Defendant's lengthy criminal history and conduct.

Accordingly, the trial court followed the purposes and principles of the Sentencing Act when it applied a sentence within the appropriate sentencing range, and the trial court acted within its discretion when it denied alternative sentencing.  The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE